UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Reach Companies, LLC,                                    File No. 20-cv-01129 (ECT/JFD)

        Plaintiff and Counter-
        Defendant,

v.                                                                       **OPINION AND ORDER**

Newsert LLC,

        Defendant and Counter-
        Claimant.

---

Michael C. McCarthy and Judah Druck, Maslon LLP, Minneapolis, MN, for Plaintiff Reach Companies, LLC.

Mark L. Johnson and Aaron P. Knoll, Greene Espel PLLP, Minneapolis, MN, for Defendant Newsert LLC.

---

The jury in this breach-of-contract case returned a verdict in favor of Defendant and Counter-Claimant Newsert LLC, awarding it damages of $1,196,364, and rejecting the claims asserted by Plaintiff and Counter-Defendant Reach Companies, LLC. Three post-trial motions require adjudication: (1) Newsert moves to amend the judgment to include prejudgment interest totaling $265,493.70. This motion will be granted because the requirements of Minnesota's prejudgment interest statute are met. (2) Reach moves for a new trial, essentially challenging the evidence in one respect and a jury instruction. This motion will be denied because the evidence supports the challenged portion of the jury's verdict and because the challenged instruction, along with its associated legal ruling, were correct. (3) Prompted by mid-trial cash transfers made by Reach owner and CEO John

Tollefson from Reach to another Tollefson-controlled business, Newsert seeks leave to file and serve a supplemental complaint and an order of prejudgment attachment. These requests will be granted because the better answers at this stage are that Tollefson intended the transfers to hinder, delay, or defraud Newsert as judgment creditor and that an attachment order is necessary to secure satisfaction of the judgment.

I

The facts specifically relevant to the post-trial motions are as follows. Two business organizations, Reach and Newsert, entered a hand-sanitizer sales agreement during the early months of the COVID-19 pandemic. ECF No. 70 at 1. Reach agreed to sell hand sanitizer to Newsert. ECF Nos. 1, 8. Their business relationship broke down after little more than a month, and each asserted contract and tort claims against the other, *id.*, though their tort claims did not survive summary judgment, ECF No. 70 at 22. Reach claimed Newsert backed out of commitments to purchase several million dollars' worth of hand sanitizer, causing Reach significant damages. ECF No. 1. Newsert claimed that Reach failed to deliver hand sanitizer as agreed, causing Newsert significant damages. ECF No. 8.

On May 4, 2020, Newsert sent Reach a written demand for payment. ECF No. 144-1. In this demand, Newsert provided Reach with a rough calculation of Newsert's damages. *See id.* at 3–5. Newsert told Reach that although "[t]he damage claims do not include the extent of the total damages suffered" it would accept $567,632.55 to "swiftly resolve this dispute." *Id.* at 4. Newsert also reserved the right to seek additional damages. *Id.* at 5. On May 8, 2020, Reach filed its complaint, thus commencing this case. ECF

No. 1.  Newsert then filed an answer and counterclaim on June 1, 2020, in which it alleged it had been damaged in excess of $500,000 as a result of lost profits on certain hand sanitizer orders.  ECF No. 8.

Trial began on July 18, 2022.  *See* ECF No. 124.  The admitted evidence included nineteen written purchase orders.  ECF No. 163 at 8; Exs. D-1–D-19; ECF No. 137.  Some of these purchase orders provided that goods should be delivered "ASAP," while some contained language with specified delivery dates.  *See* Ex. D-18.  For example, one purchase order indicated that the required ship date is "ASAP," while the notes section states: "Must be shipped no later than 4/14, sooner is better."  Ex D-19.

Tollefson testified on July 18th, 19th, and 20th.  ECF Nos. 124, 125, 126.  He testified, among other things, that Newsert CEO David Serata did not have an issue with price increases.  *See* ECF No. 164 at 228–29.  Serata then testified on July 21st about Newsert's incurred damages with the aid of a spreadsheet he used to track hand sanitizer orders.  ECF No. 166 at 806–10; Ex. D-144.  This spreadsheet was admitted into evidence by stipulation.  ECF No. 82 at 18; *see* ECF No. 163 at 7–8.

In a pre-trial motion in limine, Newsert sought to exclude parol evidence relating to the written purchase orders.  ECF No. 106.  Reach opposed this motion, arguing that the purchases fell under an exception to the parol evidence rule allowing parol evidence to explain the meaning of the terms of an incomplete or ambiguous agreement.  ECF No. 120. At the Court's invitation, Reach filed a supplemental memorandum during trial in which Reach argued that its communications with Newsert should be admitted under the UCC's

3

custom and trade exception.  ECF No. 134.  I determined that the purchase orders were

unambiguous, and the following instruction was provided to the jury:

> During trial, you heard testimony about oral and written communications between Reach and Newsert concerning the terms of their contracts.  Evidence of communications or interactions that occurred before the formation of a written contract—in this case, a purchase order—may not be used or considered by you to alter, supplement, or contradict the written terms of that purchase order.  In other words, the terms of the purchase order regarding price, shipping deadlines, type and quantity of goods, and any other requirements, are unambiguous and may not be modified or altered by evidence of prior oral or written communications.
>
> After a written contract is formed, parties may agree to substitute different contract terms for the original contract terms. This is called a modification. Reach claims that the parties agreed to modifications of the parties' written contracts. To prevail, Reach must prove any modification by clear and convincing evidence. The clear-and-convincing-evidence standard is higher than the greater-of-the-weight-of-the-evidence standard. The clear-and-convincing-evidence standard requires that the truth of the facts asserted is highly probable.

ECF No. 135 at 21.

At trial, Newsert sought $2,196,364 in damages from Reach.  ECF No. 166 at 904.

This total consisted of:

- Unused advance payments: $240,060.
- Overcharges: $263,192.
- Lost profits: $693,112.
- Hand sanitizer Newsert was unable to sell: $1,000,000.

ECF No. 166 at 902–04.  The jury returned its verdict on July 21, 2022, awarding Newsert

$1,196,364.  ECF No. 138.  The verdict form did not itemize damages.  *See id.*  The next

day, judgment was entered in favor of Newsert on its breach-of-contract claim and against Reach's breach-of-contract claim in accordance with the jury's verdict.  ECF No. 139.

After trial, Newsert learned that on July 20, 2022, the day he concluded his trial testimony, Tollefson signed two checks on behalf of Reach, paying Munster Real Estate, LLC a total of $1,249,704.72.  *See* ECF No. 180 at 12; ECF No. 165 at 444–524.  Jon Tollefson owns and controls Munster.  ECF No. 189-1 at 3; *see* ECF No. 179-2 at 2; ECF No. 187 at 2.  The first check was for $884,009.97, and the second check was for $365,694.75.  ECF No. 180 at 12.  When those two checks cleared on July 26, 2022, Reach's bank account balance was reduced from $1,396,461.97 to $152,663.62.  ECF No. 180 at 9.  By the time Newsert served its statutory garnishment summons on Reach's bank, all it could collect was $66,766.49.  ECF No. 180 at 2.  Thus, $1,129,597.51 of Newsert's judgment remains uncollected from Reach.

## II

Begin with Newsert's motion to amend the judgment in its favor to include $265,493.70 in prejudgment interest.  ECF No. 149 at 1.  In Minnesota, prejudgment interest awards are governed by statute.  Under Minn. Stat. § 549.09 subdiv. 1(b), when a judgment is for the recovery of money, prejudgment interest is calculated "from the time of the commencement of the action . . . or the time of a written notice of claim, whichever occurs first."  Minn. Stat. § 549.09 subdiv. 1(b).  This statute also provides that if a judgment is for over $50,000, "the interest rate shall be ten percent per year until paid."  Minn. Stat. § 549.09 subdiv. 1(c)(2).

There were 810 days between Newsert's May 4, 2020 written demand, ECF No. 144-1, and the July 22, 2022 judgment entered in its favor, ECF No. 139. As the judgment is for over $50,000, prejudgment interest accrues at a rate of ten percent per year. *See* Minn. Stat. § 549.09 subdiv. 1(c)(2). Ten percent of Newsert's $1,196,364 jury verdict comes to $119,636.40 in interest per year, or $327.77 in interest per day. This daily amount, $327.77, multiplied by the 810 days between the written demand and judgment, leaves Newsert with a total prejudgment interest award of $265,493.70.

Reach contends that prejudgment interest is not available when the amount of the claim is dependent in whole or in part on the discretion of the jury. *See Baufield v. Safelite Glass Corp.*, 831 F. Supp. 713, 719 (D. Minn. 1993). At oral argument, Reach claimed that this contention is not based on the ascertainability rule, a common-law doctrine under which "prejudgment interest is not allowed on unliquidated claims that are not readily ascertainable by computation or by reference to generally recognized standards, or where the amount of the claim is dependent in whole or in part upon the discretion of the jury." *Id.* at 719 (quoting *Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 743 (Minn. Ct. App. 1985)). The ascertainability rule was overturned with the passage of Minn. Stat. § 549.09. *See Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988); *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 845 F. Supp. 2d 975, 979 (D. Minn. 2012), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) ("[B]ecause the Minnesota Supreme Court clearly held in *Lienhard* that prejudgment interest is available irrespective of a defendant's ability to ascertain the amount of damages, the Minnesota Court of Appeals has concluded that post-*Lienhard* cases that apply the ascertainability rule are incorrect.") (cleaned up) (citing *Myers v.*

6

*Hearth Techs., Inc.*, 621 N.W.2d 787, 794 (Minn. Ct. App. 2001)).  Instead, Reach argues there is a separate rule barring prejudgment interest for awards based on jury discretion. Specifically, Reach cites an unpublished case, *Lester Bldg. Sys. v. Louisiana-Pac. Corp.*, in which the Minnesota Court of Appeals held that prejudgment interest on lost profits was inappropriate when the jury was exercising discretion in deciding a damages amount.  No. A03-48, 2004 WL 291998, at *10 (Minn. Ct. App. Feb. 17, 2004).

Tracing the development of this infrequently cited rule reveals its origin in *Swanson v. Andrus*, a 1901 Minnesota Supreme Court case.  86 N.W. 465 (Minn. 1901).  There, the court held that a trial court had not erred by denying prejudgment interest for lost profits. *Id.* at 510–11.  It based this decision on the ascertainability rule.  "To allow him interest on the amount of his prospective profits . . . would be unjust.  Again, the amount of his damages was not definitely ascertainable by reference to any generally recognized standard, but the amount thereof to some extent depended on the discretion of the jury." *Id.*  Minnesota courts did not allow prejudgment interest when the amount of the claim was dependent in whole or in part on the discretion of the jury *because* these damages were not ascertainable.  The basis for Reach's argument thus is the ascertainability rule which, with the passage of Minn. Stat. § 549.09, is no longer good law.  Reach's assertion that prejudgment interest is unavailable when the claim amount is dependent upon the discretion of the jury is not correct.

Alternatively, Reach argues that May 4, 2020, the date of Newsert's written demand, is an improper date to begin the prejudgment-interest calculation on the entire jury award because the letter makes no demand for lost profits.  ECF No. 156 at 4.  Instead,

Reach argues, the letter demanded only two categories of damages: monies wired to Reach, and overpricing. *Id.* (citing ECF No. 144-1 at 4). Reach claims it could not "have determined the amount of its potential liability from a generally recognized objective standard of measurement," and thus the letter cannot be treated as a written notice of claim to trigger a prejudgment interest calculation. *Id.* (quoting *Creekview of Hugo Ass'n, Inc. v. Owners Ins. Co.*, 386 F. Supp. 3d 1059, 1068 (D. Minn. 2019) (quotations omitted)). As the jury's verdict form did not distinguish between Newsert's claimed amounts, Reach claims that prejudgment interest should not be calculated before Newsert filed its counterclaims on June 1, 2020. *Id.* This is a difference of 28 days, and if applied to Newsert's offered calculation, would decrease its prejudgment interest award by $9,177.56, leaving a total of $256,316.14.

Reach is mistaken. The application of Minn. Stat. § 549.09 is well-illustrated in *Five Star Custom Foods*, 845 F. Supp. 2d 975. There, parties to a breach-of-contract action disputed the start date for the accrual of prejudgment interest. *Id*. at 977. The plaintiff sent the defendant a letter that included a demand for payment. *Id.* The letter provided the defendant with a rough calculation of the plaintiff's damages, and despite the possibility that the alleged damages could increase, indicated the plaintiff would accept a specified amount to fully settle the matter. *Id.* at 978. The plaintiff reserved the right to seek additional damages if the parties could not resolve the dispute. *Id.* The court found the letter was a written demand under § 549.09 as it both sufficiently advised the defendant of the plaintiff's damages, and demanded prompt payment to resolve the issue. *Id.* Further, it was not required under § 549.09 that the damages be calculable when the written demand

was made. *Id.* As a result, prejudgment interest was awardable from the date of the letter. *Id.* at 979.

Here, Newsert seeks prejudgment interest from the date of its May 4, 2020 demand letter. And as in *Five Star Custom Foods*, Newsert's letter provided Reach with a rough calculation of Newsert's damages. *See* ECF No. 144-1 at 3–5. Newsert told Reach that although "the damage claims do not include the extent of the total damages suffered" it would accept $567,632.55 to "swiftly resolve this dispute." *Id.* at 4. Newsert also reserved the right to seek additional damages. *Id.* at 5. The May 4, 2020 letter is a written demand under § 549.09, and thus prejudgment interest is awardable from that date.

In accordance with Minn. Stat. § 549.09, Newsert's motion to amend the judgment will be granted, and it will be awarded $265,493.70 in prejudgment interest, for a total judgment of $1,461,857.70 before costs.

III

Next is Reach's motion for a new trial. Reach moves for a new trial on (1) Newsert's claim to lost profits; (2) the parties' liabilities due to an allegedly erroneous determination that purchase orders are unambiguous, and a corresponding jury instruction on parol evidence; and (3) Newsert's claim for overcharges. ECF No. 168 at 1.

Federal Rule of Civil Procedure 59 permits a party to move for a new trial following a jury trial. Fed. R. Civ. P. 59(a)(1)(A). The district court may grant a motion for a new trial on all or some issues. *Id.* The decision whether to grant a new trial is at the discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Still, the function of the jury is not to be trivialized. *Christian v. Wagner*, 611 F. Supp. 2d 958, 963

(S.D. Iowa 2009) *aff'd*, 623 F.3d 608 (8th Cir. 2010).  The court should only disturb a jury verdict if the first trial "resulted in a miscarriage of justice, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial." *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013).  When considering a motion for a new trial, a district court may not simply set aside the verdict because the jury could have come to a different conclusion about the evidence, or because the judge believes a different result would be more reasonable.  *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 465 (8th Cir. 2016).  Instead, a motion for "[a] new trial should be granted only if the evidence weighs heavily against the verdict." *White Commc'ns, LLC v. Synergies3 Tec Servs., LLC*, 4 F.4th 606, 613–14 (8th Cir. 2021) (citing *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013)).  "The district court is free to weigh the evidence and disbelieve witnesses, and may grant a new trial even where there is substantial evidence to sustain the verdict." *Frumkin v. Mayo Clinic*, 965 F.2d 620, 624 (8th Cir. 1992) (quotations omitted).

## A

Reach first argues that it is entitled to a new trial because Newsert failed to prove its lost-profits damages.  ECF No. 168 at 4.  To prove lost profits damages under Minnesota law, Newsert needed to show that (a) profits were lost, (b) the loss was directly caused by the breach, and (c) the losses could be calculated with reasonable certainty.  *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008) (citing *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 816 (Minn. 1979)).

Reach argues that Newsert failed to prove causation or that the losses could be calculated with reasonable certainty because it supported its calculation with a spreadsheet listing customer orders, rather than by introducing the actual underlying agreements it had with its customers. ECF No. 168 at 5. Reach questions the reliability of this spreadsheet, arguing that there was no testimony or evidence supporting the truth of the information it contained. *Id.* at 6. In particular, Reach takes issue with Serata's testimony surrounding the spreadsheet, as Serata did not create the document, though he did largely maintain it. *See id.* (citing ECF No. 166). This lack of support is compounded, Reach argues, by Newsert's lack of experience in the hand sanitizer market when it began placing orders with Reach. *Id.* (citing *Unique Sys., Inc. v. Zotos Int'l, Inc.*, 622 F.2d 373 378 (8th Cir. 1980) ("The burden of proof of lost profits is particularly heavy in the case of a new business."); *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 948 (D. Minn. 2006) ("Damages for lost profits, especially for a relatively new business venture, must be supported by specific, concrete evidence, not by mere 'speculation and conjecture.'"). Under Reach's theory, the spreadsheet fails to prove that Newsert would have received any profit had Reach fulfilled its purchase orders; thus, the jury's damages award fails to meet the standard in Minnesota, and Reach is entitled to a new trial. *Id.* at 7 (citing *Dominium Mgmt. Servs., Inc. v. Nationwide Hous. Grp.*, 195 F.3d 358, 366 (8th Cir. 1999)).

A new trial is not warranted on this ground. Newsert's presented evidence demonstrates its lost-profit damages and meets the standard set by Minnesota law. Its written purchase orders show agreements with Reach for 100,000 gallons of hand-sanitizer at $23.50 each, Ex. D-19, and 400,000 units of hand-sanitizer at $3.25 each, Ex. D-18. The

total price for these orders is $3,650,000. Serata's testimony and the spreadsheet—which was admitted by stipulation of the parties—showed Newsert had an agreement to sell each of the 100,000 gallons to The Will Group for $30.50 each ($7.00 profit), and each of the 400,000 units to Garland Sullivan for $4.30 each ($1.05 profit). Ex. D-144; ECF No. 166 at 805–13. Reach failed to ship 45,064 gallons of hand-sanitizer to Newsert, depriving Newsert of $7.00 in profit per gallon, for a total of $315,448 in lost profits from its agreement with The Will Group. ECF No. 166 at 808–10; Ex. D-19; Ex. D-144. Reach failed to ship 359,680 units of hand-sanitizer to Newsert, depriving Newsert of $1.05 in profit per unit, for a total of $377,664 in lost profits from its agreement with Garland Sullivan. ECF No. 166 at 810–12; Ex. D-18; Ex. D-144. The total of these losses is $693,112. Newsert claimed $693,112 in lost profit damages. These figures provided a basis for the jury to find that profits were lost by Newsert due to Reach's contract breaches, and a means by which they could be calculated with reasonable certainty. Reach's challenges to the credibility of Serata's testimony and the spreadsheet are unconvincing. Reach's motion for a new trial on lost profits will be denied because the verdict is consistent with the evidence.

B

Reach next argues that the Court erred when it determined at trial that the at-issue purchase orders were unambiguous, and the jury was instructed to disregard parol evidence. ECF No. 168 at 8. Reach argues that this asserted error warrants a new trial. This aspect of Reach's motion implicates two issues. The first is procedural—whether

12

Reach preserved a claim of error for this issue at trial.  The second is substantive—whether the decision constituted error that warrants a new trial.

First, the procedural issue.  Reach did not object to the parol-evidence jury instruction at trial.  *See* ECF No. 166 at 870–73.  The instructions were discussed one at a time with the parties and objections were entertained.  *Id.* at 869.  When Instruction No. 16 was discussed, Reach stated: "Sixteen is two versions. We would prefer version number one."  *Id.* at 870.  A short discussion then followed where the Court explained that the instruction reflected that not only *oral* modifications, but also prior *written* communications could be considered parol evidence.  *Id.* at 871–72.  Reach responded by stating: "That prior written communications are inconsistent with the final writing would be barred under the parol evidence rule? . . . I think that is consistent under the common law, yes."  *Id.*  The Court then clarified that contract modification through subsequent communications also could occur by both oral and written means, and that this was reflected in the instruction.  *Id.* at 872–73.  Reach lodged no contemporaneous objection to Instruction No. 16.

The context leading up to this opportunity to object somewhat complicates whether Reach preserved a claim of error.  The day before the instruction, Reach was given the opportunity to file a brief explaining its position that parol evidence should be considered by the jury and its position that the purchase orders were ambiguous.  ECF No. 165 at 737–45.  Reach timely filed that brief, a supplement to its brief in opposition to Newsert's first motion in limine, before the 8:00 a.m. deadline on the morning jury instructions were

given.  *See* ECF No. 134.  In it, Reach argued the very points it now argues are grounds for a new trial.  *See id.*

Reach now contends that the briefing preserved this issue for further review, citing a Tenth Circuit case that provides a motion in limine may preserve an objection under certain circumstances.  *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1230 (10th Cir. 2001).  This question appears to be the subject of a circuit split.  *See United States v. Graves*, 5 F.3d 1546, 1552 n.6 (5th Cir. 1993) ("Several circuits appear to follow our rule that, to preserve error for appeal, an objection or offer of proof as to the subject presented by a motion in limine must be made at trial . . . Nevertheless, some circuits are acting to soften the rule.") (citing cases).

The Eighth Circuit has consistently held that objections must be on the record to preserve a claim of error.  *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1408 (8th Cir. 1989).  Yet, the basis for these Eighth Circuit decisions is a complete failure by the non-objecting party to notify the court that it believed there was an error.  *See, e.g., Johnson v. Houser*, 704 F.2d 1049 (8th Cir. 1983).  "The purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to correct any error in the instructions and also to prevent the losing party from obtaining a new trial through relying on a possible error in the original trial."  *Id.* at 1051 (citing *Lange v. Schultz*, 627 F.2d 122, 128 (8th Cir. 1980)).  Reach's brief made clear its position on parol evidence and the jury instruction.  Reach's actions were consistent with the spirit of Rule 51.

Regardless, whether Reach preserved its objection need not be resolved because Reach's substantive argument for a new trial on this basis fails.  An erroneous ruling must

14

have substantially influenced the jury's verdict to constitute a miscarriage of justice. *Littleton v. McNeely*, 562 F.3d 880, 888 (8th Cir. 2009) (quoting *Harris v. Chand*, 506 F.3d 1135, 1139 (8th Cir. 2007)).  Reach claims it was error when it was determined at trial that the purchase orders at issue were unambiguous, and the jury was instructed to disregard parol evidence.

Reach is incorrect, as neither the purchase-order-ambiguity determination nor the corresponding jury instruction were erroneous.  "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (citation and quotation omitted).  This determination is a question of law.  *Id.*  The purchase orders here provide clear terms regarding price, quantity, shipping deadlines, and shipping requirements.  *See* Ex. D-18; Ex. D-19.  A requirement that the goods ship "ASAP" in no way creates ambiguity about whether or not goods ship by a particular "not-later-than" date.  The purchase orders are therefore unambiguous.

As the purchase orders are unambiguous, the jury instruction was correct.  It is well-settled in Minnesota that the parol evidence rule prohibits the admission of extrinsic evidence of prior oral or written agreements to explain the meaning of an unambiguous contract.  *Maday v. Grathwohl*, 805 N.W.2d 285, 287 (Minn. Ct. App. 2011).  Instruction No. 16 informed the jury of this rule, while properly allowing them to consider evidence of post-contract modifications.  ECF No. 135 at 21; *see Bolander v. Bolander*, 703 N.W.2d 529, 541–42 (Minn. Ct. App. 2005).

For this same reason, Reach's argument that it is entitled to a new trial on Newsert's overcharge claim is similarly without merit. Reach argues that the jury was erroneously prevented from considering any evidence that Newsert accepted price increases, and thus was deprived of grounds to reject Newsert's overcharge claim. ECF No. 168 at 13. Yet not only was Instruction No. 16 legally correct, but it informed the jury that they could consider evidence of post-contract modifications. ECF No. 135 at 21. No new trial is warranted.

IV

Newsert moves for permission to file and serve a supplemental complaint and for prejudgment attachment. ECF No. 176. During the trial for this case, Tollefson transferred nearly all of the money in Reach's bank account—$1,249,704.72 of a then-$1,396,461.97 balance—to Munster Real Estate, LLC, another company controlled by him. ECF No. 180 at 9. Newsert seeks to void these transfers and prevent further transfers so it may collect its judgment. ECF No. 178 at 2. It also seeks an order of attachment to freeze the funds in the accounts of Reach, Tollefson, and Munster sufficient to cover the judgment awarded and prejudgment interest. *Id.*

A

First is Newsert's motion for permission to file and serve a supplemental complaint against Reach, Jon Tollefson, and Munster Real Estate, LLC, alleging that they violated the Uniform Voidable Transactions Act, Minn. Stat. § 513.44(a). ECF No. 178 at 5–8. Federal Rule of Civil Procedure 15(d) provides that a court may permit a party to serve a supplemental pleading setting out a transaction that occurred after the pleading it

16

supplements. Fed. R. Civ. P. 15(d). Whether to permit a party to serve a supplemental pleading is at the discretion of the Court. *Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000). Courts in this jurisdiction have allowed parties to seek to redress a voidable transfer after a final judgment has been entered. *See Clarinda Color LLC v. BW Acquisition Corp.*, No. 00-cv-722 (JMR/FLN), 2004 WL 2862298 (D. Minn. June 14, 2004).

The Uniform Voidable Transactions Act allows creditors to recover assets that debtors have fraudulently transferred to third parties. It provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transaction was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Minn. Stat. § 513.44(a). Factors to consider in determining whether the "actual intent" standard was met include whether:

    (1)    the transfer was made to an insider;

    (2)    the debtor retained possession or control of the property after the transfer;

    (3)    the transfer was disclosed or concealed;

    (4)    before the transfer or obligation was incurred, the debtor had been sued or threatened with suit;

    (5)    the transfer was of substantially all the debtor's assets;

    (6)    the debtor absconded;

    (7)    the debtor removed or concealed assets;

    (8)    the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    (9)    the debtor was insolvent or became insolvent shortly after the transfer or obligation;

    (10)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11)    the debtor transferred the essential assets of the business
>         to a lienor that transferred them to an insider of the
>         debtor.

Minn. Stat. § 513.44.  These factors are non-exclusive.  *Stoebner v. Opportunity Fin., LLC*,

909 F.3d 219, 224 (8th Cir. 2018).

As applied, the § 513.44 factors indicate Tollefson's transfer was made with actual

intent.  Factors (1) and (2) suggest actual intent, as Tollefson made the transfer from one

entity he owns and controls to another.  *See* ECF No. 179-2 at 2; ECF No. 187 at 2.

Although Reach and Munster are separate entities, Reach itself states that Munster is now

paying Reach's bills.  *See* ECF No. 187 at 4–5 ("Munster has used the funds to continue

its business, including by making a loan payment on a commercial mortgage, purchasing

certain inventory from Reach, *and paying a supplier of products that Reach had previously*

*agreed to purchase (with the result that Reach did not need to make that payment).*")

(emphasis added).

Factor (3) indicates actual intent as there is no record of Tollefson disclosing the

transfer.  Factor (5) does as well—when the two checks cleared on July 26, 2022, Reach's

bank account balance went from $1,396,461.97 down to $152,663.62.  ECF No. 180 at 9.

By the time Newsert served its statutory garnishment summons on Reach's bank, all that

remained was $66,766.49.  *See* ECF No. 180 at 2.  Factor (10) indicates actual intent, as

the transfer occurred shortly before the jury verdict.  *See* ECF No. 138.

Factor (4) also points to actual intent, as the transfer occurred on July 20, 2022, the

day Tollefson testified at trial, which is long after Tollefson had been threatened with suit.

*See* ECF No. 165 at 444.  Still, Reach argues that its obligation to pay Munster preceded

18

this litigation.  ECF No. 187 at 3.  Reach CFO Tim Winsor has testified in a declaration

that the day Tollefson testified happened to coincide with Reach's obligations to pay

Munster:

- $214,824.72, the amount Reach claims to have owed Munster
  for the rental of two properties;
- $115,068.96, the common area maintenance fees;
- $35,801.07, the cost of a new security system; and
- $884,009.97, the amount Reach owed Munster in royalties
  from 2017 through 2021 for the sale of flavored straws licensed
  by Munster.

ECF No. 190 at 3–4.  The total of these payments is $1,249,704.72.  Reach paid no royalties

to Munster for five years yet opted to on the day Tollefson concluded his trial testimony.

ECF No. 190-1 at 76.  As Tollefson explained under penalty of perjury, "The timing of

these payments related to *obligations* that Munster had *coming due* in August, specifically

a $420,000 loan payment to Venture Commercial Mortgage."  ECF No. 188 (emphasis

added).  Winsor doubled down on this characterization, declaring, "I understood the timing

of the payments to Munster to be related to a loan payment that Munster had due in

August."  ECF No 190 at 4.

It appears that Tollefson and Winsor deliberately mischaracterized the nature of

these transactions in their sworn declarations.  In response to a subpoena served by

Newsert, Lakeview Bank produced documents demonstrating that Munster's payment to

Venture Commercial Mortgage was not due to an "obligation[] that Munster had coming

due in August," but rather a voluntary prepayment of principal orchestrated by Winsor.

*Compare* ECF Nos. 188 and 190, *with* ECF No. 195 at 5–6 (a July 14, 2022 email from

Tim Winsor to Venture Commercial Mortgage which states, "We would like to make an

additional principle [sic] payment this year.  Can we again pay up to $420,000?  Can the payment be made 8/1/2022?").  The email thread, between Winsor and representatives from Venture Commercial Mortgage, indicates that $420,000 was the maximum pre-payment that could be made without incurring a penalty.  *See* ECF No. 195.  On October 31, 2022, Tollefson forwarded this thread to a Senior Vice President at Lakeview Bank, stating, "Attached is a [sic] amortization schedule directly from the lender.  You can see as of Tuesday the balance will be 647,190.77.  *If the appeal process* does take 2 yrs [sic] the balance would be 157,441.21."  *Id.* at 2 (emphasis added).

The § 513.44 factors indicate Tollefson actually intended "to hinder, delay, or defraud" Newsert, a judgment creditor of Reach.  *See* Minn. Stat. § 513.44.  Newsert's § 513.44 argument has merit, so its request to file and serve a supplemental complaint will be granted.

B

Newsert also requests an order of attachment to prevent further transfers or dissipation of funds pending resolution of Newsert's voidable transfer claims.  ECF No. 178 at 8.  Federal Rule of Civil Procedure 64 allows for the attachment of property under the laws of the state in which a district court sits—here, Minnesota—throughout an action to secure satisfaction of the potential judgment.  Fed. R. Civ. P. 64.  In Minnesota, courts may enter an order of attachment to provide security for the satisfaction of a judgment "when the respondent has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of the respondent's nonexempt property, with intent to delay or defraud the respondent's creditors."  Minn. Stat. § 570.02 subdiv. 1(1).  To obtain this order,

Newsert must not only show the existence of this ground, but also a probability of success on the merits. Minn. Stat. § 570.026 subdiv. 3. An order may not be issued if there is not a risk to collectability of a judgment. *Id.* One also may not be issued if Reach raises a nonfrivolous defense to the merits of Newsert's claim, the interests of Reach cannot be adequately protected by a bond filed by Newsert if property is attached, and the harm suffered by Reach would be greater than that suffered by Newsert if the property were not attached. *Id.*

Newsert has met this standard. First, Reach has already "assigned, secreted, or disposed" of most of the funds in its bank account by transferring them to Munster, meeting the requirement of § 570.02 subdiv 1(1). *See* ECF No. 180 at 9. Further, records from Lakeview Bank indicate that Tollefson has wired at least $500,000 from Reach's bank account to his personal account at Wells Fargo since the beginning of 2022. *See* ECF Nos. 196 and 197. Newsert has a high probability of success on the merits, as it was already ordered that Newsert was to recover $1,196,364 from Reach on Newsert's breach-of-contract claim, ECF No. 139, and the § 513.44 factors, discussed above, indicate Tollefson's transfer was made with actual intent, *see supra* Section IV(A). There is also a risk to collectability of the judgment, *see* Minn. Stat. § 570.026 subdiv. 3, as Newsert was only able to collect $66,766.49 of its $1,196,364 judgment from Reach's bank account, ECF No. 180 at 2.

Still, an order may not be issued if Reach, Tollefson, and Munster raise a nonfrivolous defense to the merits of Newsert's claim. Minn. Stat. § 570.026 subdiv. 3. They do not. They argue that the intent element of § 570.02 subdiv. 1(1) is not met, as the

$1.2 million transfer occurred a day before the jury verdict was reached, and at the time Newsert was seeking over $2 million.  ECF No. 187 at 7.  This argument ignores the fact that Reach did not have over $2 million in its bank account.  When the checks were cashed, Reach's bank account balance was reduced from $1,396,461.97 to $152,663.62.  ECF No. 180 at 9.

Next is whether the interests of Reach, Tollefson, and Munster can be adequately protected by a bond filed by Newsert if property is attached.  Minn. Stat. § 570.026 subdiv. 3.  "In establishing the amount of the bond, the court shall consider the value and nature of the property attached, the method of retention or storage of the property, the potential harm to the respondent or any party, and other factors that the court deems appropriate."  Minn. Stat. § 570.041 subdiv. 1.  The most relevant factor here is the potential harm to Reach, Tollefson, and Munster.  This also directly relates to the final question in the § 570.026 analysis, which is whether the harm suffered by Reach would be greater than that suffered by Newsert if the property were not attached.  Minn. Stat. § 570.026 subdiv. 3.  While attachment will harm Reach, Tollefson, and Munster, it is not greater than what Newsert would suffer if the attachment order were not issued.  Tollefson would be free to continue transferring these funds or spending them.  Further, it is unclear how much of these funds even remain in Munster's account.  Munster has spent at least some of these funds making their requested $420,000 loan pre-payment, purchasing inventory from Reach, and paying Reach's bills.  ECF No. 187 at 5; ECF No. 195; *see* ECF No. 188.  The statutory minimum bond requirement of $500 is appropriate here as judgment has already been rendered in Newsert's favor.  Minn. Stat. § 570.041; ECF No. 139.

Newsert has met all requirements under Minnesota law, and thus its request for an order of attachment will be granted.  The remaining balance of Newsert's judgment, after deducting the $66,766.49 it has already collected, is $1,129,597.51.  In addition, Newsert will be awarded $265,493.70 in prejudgment interest.  As a result, the order of attachment will be for $1,395,091.21.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.      Newsert's motion to amend the judgment in its favor to include an award for prejudgment interest [ECF No. 141] is **GRANTED**.  Newsert is awarded $265,493.70 in prejudgment interest, for a total judgment of $1,461,857.70.

2.      Reach's motion for a new trial [ECF No. 155] is **DENIED**.

3.      Newsert's motion to file and serve a supplemental complaint [ECF No. 176] against Reach Companies, LLC; Munster Real Estate, LLC; and Jon Tollefson is **GRANTED**.

4.      Newsert's motion for prejudgment attachment [ECF No. 176] is **GRANTED**.  In accordance with Minn. Stat. § 570.02 and § 570.026, Newsert has demonstrated a probability of success on the merits of its claim.  Reach, Munster, and Tollefson have assigned, secreted, or disposed of nonexempt property with intent to delay or defraud Newsert, as a judgment creditor of Reach.  This finding is based on Tollefson's transfer of $1,249,704.72 from Reach's bank account to Munster's bank account during the trial of this action; that both accounts and companies are directly controlled by

23

Tollefson; and that this transfer made it impossible for Newsert to garnish funds sufficient to pay the judgment against Reach in this action.  Reach, Munster, and Tollefson were given notice of the hearing in this matter, and were offered the opportunity to identify exempt property, without waiver of the right to claim exemption in property not identified at the hearing.

5.      The Ramsey County sheriff and the sheriffs of any other relevant counties shall, using the full force of the county, take appropriate steps to freeze assets in the accounts controlled by Reach Companies, LLC; Munster Real Estate, LLC; and Jon Tollefson totaling $1,395,091.21, or such other amount as the Court may order in the future, and ensure that such funds are not transferred out of those accounts or otherwise depleted except upon order of this Court.

6.      Pursuant to Minn. Stat. § 570.051, Reach Companies, LLC; Munster Real Estate, LLC; and Jon Tollefson shall, within seven days after entry of this Order, identify all financial accounts in their possession, custody, or control; and further identify all cash or securities they currently hold in their own names or jointly with any spouse or affiliate, including the amount of such cash or securities; and state whether they claim any statutory exemption to the seizure of such cash or securities.  If not disclosed, an order shall be issued directing the non-disclosing party to appear before the Court to testify, and to show cause why an order should not be entered finding the non-disclosing party in contempt of court.

  7.  Newsert LLC shall post a $500 bond within seven days after entry of this

Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  November 10, 2022       <u>s/ Eric C. Tostrud</u>

                  Eric C. Tostrud
                  United States District Court